# IN THE COURT OF APPEALS OF IOWA

No. 20-1736
Filed April 14, 2021

**IN THE INTEREST OF M.W., J.W., and S.W.,**
**Minor Children,**

**F.W., Mother,**
       Appellant,

**D.W., Father,**
       Appellant.
_____

Appeal from the Iowa District Court for Osceola County, David C. Larson, District Associate Judge.

Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Kevin J. Huyser, Orange City, for appellant mother.

Tisha M. Halverson of Klay, Veldhuizen, Bindner, De Jong & Halverson, P.L.C., Paullina, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

Parents separately appeal the termination of their parental rights to three children, a nine-year-old and twin seven-year olds. They argue: (1) the State failed to prove the statutory ground for termination; (2) termination was not in the children's best interests; (3) the juvenile court should have applied a statutory exception to forego termination; and (4) the father alone argues the DHS failed to make reasonable efforts to reunite him with the children. We reject each of their claims, except that we find the father did not preserve error on the final claim. Therefore, we affirm termination of the parents' rights to the three children.

## I. FACTS AND PRIOR PROCEEDINGS

The family originally came to the attention of the Department of Human Services (DHS) in August 2018 when emergency services responded to a fire at their home. While the parents were asleep and intoxicated, one of the children, unsupervised, had been playing with a lighter and started a fire in the basement. Due to the extent of the fire damage, the family could no longer live in the home. Responders also observed the home was extremely unsanitary, with clutter, decaying food, and feces spread on walls. Concerns arose that the parents were using drugs while supervising the children. This led to a founded child abuse assessment for denial of critical care and failure to provide proper supervision. Another founded report in October determined the parents were not providing adequate supervision when someone saw one of the then-five-year-old twins walking on the roof of their house unattended. Finally, in December 2018, the children were removed from the home amid a third child abuse investigation and founded child abuse report. According to the family safety plan, the father was not

supposed to be caring for the children unsupervised but he was reportedly doing so.

The children were adjudicated in need of assistance and placed in foster care. DHS began providing court-ordered services to the parents, including visitation. The mother had trouble attending visitation consistently. The family safety, risk, and permanency (FSRP) provider found it difficult to communicate with her. The mother maintained an irregular work schedule and frequently was unable to attend visits. Service providers attempted to schedule around her work or offer transportation and Saturday visits. Sometimes the mother's personal and social events took precedence over interactions with her children, such as a class reunion. At one point, the mother went six months without a visit with the children. She never progressed beyond fully-supervised visits. She also moved out of state to Minnesota for work and to be closer to her family despite being told it would make it harder for the Iowa DHS to provide services. Since the mother does not have a driver's license and DHS could not transport the children across state lines, no visits were held at her home in Minnesota.

The service providers also noted the mother's poorly-developed parenting skills. Despite taking some parenting classes and receiving regular prompts from service providers, the mother was unable to absorb those lessons and appropriately redirect or discipline the children. The service providers noted this was especially true when the mother was interacting with all three children at once. The FSRP worker felt the mother could not safely parent them together. She never completed court-ordered mental-health services, but she was attending medicine management appointments.

The FSRP worker reported the father was more hands-on and skilled in his parenting during interactions with the children. He was able to "use humor to motivate them" and was "better at redirecting and keeping order" among them. The FSRP worker and the DHS social worker reported a demonstrable bond between the father and the children since they seemed to enjoy their visits.

The FSRP worker explained, and as shown by extensive records, that the three children all have special needs, qualify for behavioral health intervention services, and have IEPs at school. They also each have significant trauma-related mental-health diagnoses such as speech delays and post-traumatic stress syndrome. In the FSRP worker's opinion, the parents could not provide the level of care they require. The mother could not identify the children's medical or developmental delays or mental-health diagnoses, therapists, doctors, or teachers. The FSRP worker's hints to the mother to connect with their therapists and doctors were not taken. The FSRP worker opined "it is a 24/7 job to parent these children" and get them to their respective appointments and meetings. Due to the parents' own mental-health and substance-abuse issues, she did not think the parents could keep up with the children's needs. Neither parent consistently participated in their family therapy sessions either. In foster care, the children were receiving appropriate treatment for their developmental issues and improving.

The FSRP worker testified she saw little evidence of a bond between the mother and children. In contrast, she saw a bond with the father as the children looked forward to their visits with him and enjoyed spending time with him. Interactions went well enough that the DHS provided the father overnights and one trial home placement with the oldest child. That ended because of reports that the

father had physically abused the small child of his paramour, with whom he was living.[1]  The father was charged with felony child endangerment as a result of that incident.  The criminal complaint alleged he had assaulted the child on multiple occasions leaving serious injuries, bruising, scarring, and potential loss of hearing.  Those charges were pending at the time of the termination hearing.  Also after that incident, the father was asked to submit to a drug test, which came back positive for methamphetamine.  A methamphetamine pipe was recovered from the home as well.  Despite multiple prior arrests for drug use, the father has not completed substance-abuse treatment.  He also denied having a methamphetamine problem.  The mother also denies he has used methamphetamine in the last ten years.  She believes the father is sober and can parent the children safely.  She explains any positive tests are the result of tampering by others.

The State petitioned to terminate, raising several grounds.  The juvenile court terminated the parents' rights, pursuant to Iowa Code section 232.116(1)(f) (2020).  The parents appeal separately.

## II.  SCOPE AND STANDARD OF REVIEW

"We review child-welfare proceedings de novo."  *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020).  "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility."  *Id.*  Our primary concern is the best interests of the child.  *Id.*

---

[1] While the cases were pending, the parents initially pursued marital counseling. This was unsuccessful, the parties separated but have not filed for dissolution of their marriage.  Each has entered into new relationships.

## III. ANALYSIS

### A. Statutory Ground for Termination

The juvenile court found sufficient evidence to terminate both parents' rights pursuant to the statutory ground of Iowa Code section 232.116(1), paragraph (f). Termination under paragraph (f) requires clear and convincing evidence:

> 1. The child is four years of age or older.
> 2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> 3. The child has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months and any trial period at home has been less than thirty days.
> 4. There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). In their petitions on appeal, the parents contend the State failed to prove the children could not be returned at the present time to their custody. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (defining "at the present time" to mean at the time of the termination hearing).

The father points to his almost successful thirty-day home trial period, the other children's overnight visits, and the lack of concerns that the children were suffering any harm. Of course, the trial period at home ended short of thirty days because the father allegedly committed felony child endangerment against another child in the home. The father points out his paramour's older child was allowed to return home. But we think the physical abuse of the other child and the father's subsequent positive drug test for methamphetamine show that he has not reformed his prior conduct that led to his children being removed initially. The father has not successfully completed substance-abuse treatment, continues to deny his addiction, and has not consistently attended to his children's mental and

physical well-being even if he is capable of attending to them during visitations. Clear and convincing evidence shows the children would still be in danger of adjudicatory harm if they were returned to his care.

The mother points out she had a successful home study by a Minnesota authority that recommended visitations could take place at her home. She asserts her new home no longer raised the cleanliness or sanitary concerns that were present during the family's initial contact with DHS. It is also true that the mother maintains full-time employment and is in a healthier place than earlier in the case. But we do not think she has made satisfactory improvement in significant areas. She has not yet completed any substance-abuse or mental-health treatment. The FSRP provider noted her parenting skills were inadequate to supervise the three children at the same time and did not improve despite the provision of parenting assistance and continual prompting by the FSRP provider. She continues to exercise poor judgment in her belief that the father is not a methamphetamine user and is safe to be around the children. The mother complains DHS did not investigate allowing her parents to transport the children to her for visitation or conduct a home study so the children could be placed with them. The DHS social worker gave cogent reasons for not involving the maternal grandparents—that they refused at times to cooperate with DHS and encouraged the mother not to cooperate. Even if DHS had done as the mother suggests, her parents' participation and assistance would not overcome her failure to complete the case expectations of substance-abuse and mental-health treatment and therapy. Nor would it overcome her inability to parent the children without becoming overwhelmed by their needs, which the FSRP provider and DHS worker both

testified were significant and beyond the mother's abilities to provide. The evidence is clear and convincing that the children could not be returned to her care at the present time.

### B. Best Interests of the Children

Next, both parents argue it was not in the children's best interests to terminate their rights. In making the best-interests determination, we give primary consideration to the child's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Both parents argue that because the children are not currently in a pre-adoptive placement, the increased uncertainty of termination is not in their long-term best interests. It also is not clear that the children will remain together after termination. *See J.E.,* 723 N.W.2d at 800 (describing a judicial "preference to keep siblings together" but demurring that "this preference is not absolute" and makes way for the child's best interests). But the children have already been out of the parental home for two years. The parents have not progressed sufficiently in their efforts to overcome their parenting deficiencies to resume care of the children. And once statutory timelines have run, we must view the need for stability and permanency with urgency. *In re J.H.*, 952 N.W.2d 157, 173 (Iowa 2020). Unfortunately, patience with the parent can work an "intolerable hardship" on the children. *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). And we agree with the

juvenile court that the parents have been given a full measure of patience. Even if the children are not adopted by their current placements, their long-term best interests lie in severing their legal relationship to the parents. The parents have not demonstrated an ability to parent safely and with the children's physical, mental, and emotional needs at the forefront. It is possible the children will be separated, with the older child being split away from the younger twins.[2] In closing arguments, the State represented that various adoptive homes, including relatives' homes, were under consideration but required further investigation that was not possible before the termination of parental rights hearing. We find the need for termination compelling in this case, even if it results in the children being separated. The children require permanency and stability that can only be afforded to them through termination. We find termination was in their best interests.

### C. Statutory Exception to Termination

Both parents asked the court to apply the statuary exception described under Iowa Code section 232.116(3)(c) to forego termination. Under that section, the court can withhold termination if it determines it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(c). Application of this factor is permissive, not mandatory. *See In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). But the juvenile court found no reason to apply it, and neither do we.

---

[2] Records indicate that when the older child was placed in the same foster home as the twins' sibling difficulties arose. This lead to a recommendation that the older child be adopted separately but with potential visitation with the twins.

Nothing in the record suggests the children would be harmed by terminating their mother's parental rights. The FSRP and DHS workers identified only a slight bond there, and the FSRP worker noted at one of the last visits, the children did not even greet their mother. The mother also has not treated visitation with any urgency, sometimes foregoing the chance to spend time with her children for personal pursuits. She went as long as six months without an interaction with them. We cannot say termination of her parental rights will be detrimental to them.

The father has a stronger argument—the FSRP and DHS workers noted a discernable bond between him and the three children. He was able to interact with them appropriately, and they enjoyed the visits. But given the danger posed by the father's ongoing substance-abuse problem and the fact his relapse into methamphetamine use coincided with a violent attack against another child, we cannot say severing that bond will impact the children enough to forego termination.[3]

### D. Reasonable Efforts

The father alone raises the claim that the DHS failed to make reasonable efforts to reunite him with the children. The State responds that he did not preserve error on the claim. Iowa Code section 232.102(7) requires the DHS to "make every reasonable effort to return the child[ren] to the child[ren]'s home as quickly as possible consistent with the best interests of the child[ren]." *See In re C.B.*, 611

---

[3] *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care.").

N.W.2d 489, 493 (Iowa 2000). When relying on paragraph (f) as the ground for termination, as it did here, the State must show the DHS made reasonable efforts toward reunification as part of its ultimate burden of proof. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019).

On appeal, we address those issues that were both raised and decided by the court below. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Further, to preserve error on a reasonable-efforts claim, the parent must "demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). The father claims he preserved error by arguing the issue during the permanency review hearing. We do not have a transcript of the permanency review hearing in our record on appeal. But the juvenile court's permanency review order, filed the same day as the termination order, mentions only the mother's motion for additional services and request for reasonable efforts, which the court denied. In the prior permanency order, the court determined reasonable efforts had been provided to the parents, with no indication the father requested any "other, different or additional services." *Id.* Therefore, we agree with the State the father did not preserve this issue for our review.

**AFFIRMED ON BOTH APPEALS.**